UNITED STATES v. ONE BUICK ROADSTER AUTOMOBILE.

(District Court, E. D. Oklahoma.   July 7, 1917.)

No. 2574.

1. STATUTES ☞225¾—PRESUMPTIONS TO AID CONSTRUCTION.
    Congress must be presumed to have enacted the proviso of Indian Appropriation Act March 2, 1917, c. 146, 39 Stat. 969, 970, for the forfeiture of vehicles used in introducing intoxicants into the Indian country, whether used by the owner thereof or other persons, with knowledge of the construction placed by the courts upon Rev. St. § 2140 (Comp. St. 1916, § 4141), as not authorizing the forfeiture of anything but the interest of the guilty person in such vehicles.

2. INDIANS ☞35—INTRODUCING LIQUOR INTO INDIAN COUNTRY—FORFEITURE OF VEHICLES.
    In the light of the construction placed by the courts upon Rev. St. § 2140, the proviso of Indian Appropriation Act March 2, 1917, authorizes the forfeiture of automobiles and other vehicles used in the introduction of liquor into Indian country, whether the one so using them was the owner or his agent or servant, or some person who, having secured possession of the vehicle from the owner, was using it in this unlawful purpose without the owner's knowledge or consent; and hence, where a mortgagee of an automobile permitted the mortgagor to retain possession, his interest as mortgagee did not prevent the forfeiture of the automobile, because used by the mortgagor in introducing such liquor into Indian country.

3. INDIANS ☞35—INTRODUCING LIQUOR INTO INDIAN COUNTRY—STATUTORY PROVISIONS.
    Act March 1, 1895, c. 145, 28 Stat. 693, 697, prohibiting the introduction of liquor into Indian Territory, is still in force, so far as it relates to shipments from points outside the state of Oklahoma into any portion thereof formerly constituting Indian Territory.

4. INDIANS ☞35—INTRODUCING LIQUOR INTO INDIAN COUNTRY—STATUTORY PROVISIONS.
    The proviso of Indian Appropriation Act March 2, 1917, authorizing the forfeiture of automobiles or other vehicles used in introducing intoxicants into Indian territory, or where such introduction is prohibited by treaty or federal statute, whether used by the owner or other person, was within the power of Congress to enact.

5. INDIANS ☞35—INTRODUCING LIQUOR INTO INDIAN COUNTRY—SEARCHES.
    The proviso of Indian Appropriation Act March 2, 1917, does not enlarge the right of officers to search for intoxicating liquors without warrant in other than Indian country.

At Law.   Proceeding by the United States for the forfeiture of one Buick roadster automobile.   On demurrer to portions of the interplea of E. C. King.   Demurrer sustained.

J. C. Wilhoit and Archibald Bonds, Asst. U. S. Attys., both of Muskogee, Okl.

Jas. C. Denton, of Muskogee, Okl., for intervener.

CAMPBELL, District Judge.   The question arises on the demurrer of the plaintiffs to certain portions of the interplea of E. C. King, wherein he asserts an interest in or lien upon the automobile in controversy, by virtue of a mortgage executed to him by C. C. Latta, the owner of the car.   From the information it appears that on the 20th of

March, 1917, certain officers of the United States for the suppression of the liquor traffic among the Indians seized the car, which was found by them in the possession and under the control of one C..C. Latta, who, it is alleged, was then using the car for the purpose of introducing, transporting, and conveying from without the state of Oklahoma into the Eastern district of the state of Oklahoma, formerly Indian Territory, certain whisky, in violation of law; that the car, at the time of the filing of the information, was in the custody of a special officer of the government for the suppression of the liquor traffic among the Indians, held by him subject to libel, forfeiture, and sale by the United States for the benefit of the United States and other persons, as by law provided. Prayer for usual process and monition, for decree of the court condemning the automobile as forfeited to the United States of America, and that the same be sold and the proceeds distributed according to law.

In due time one E. C. King filed his interplea herein, wherein he alleges that he is not possessed of sufficient knowledge to affirm or deny whether or not C. C. Latta was using said automobile, at the time it was seized, for the purpose of introducing intoxicating liquor from without the state of Oklahoma into the Indian Territory portion of this state, and asks that the plaintiff be held to strict proof of such allegation. As a second ground for his interplea, he alleges that he has a special ownership in said automobile by virtue of a chattel mortgage executed by Latta to him to secure the payment of a promissory note of even date with the mortgage, for the sum of $400, due six months from date, executed for borrowed money, which note is unpaid; that said chattel mortgage was duly filed for record in the office of the county clerk of.Rogers county, Okl., on November 16, 1917, and copies of the note and mortgage are attached as exhibits to the interplea. For his third ground of interplea he alleges that said automobile was never used for the introduction of intoxicating liquor in violation of law in the manner alleged in the information with his knowledge or consent, and that if the same was so used by said Latta, or any other person, it was against his (interpleader's) will, knowledge, or consent, and that said automobile is not subject to libel, forfeiture, and sale by the United States as against the rights, interest, and ownership of the interpleader, and that he is entitled to the return of the automobile to him for the purpose of foreclosing his said mortgage, in order that the proceeds of the sale of the car under such foreclosure may be applied to the payment of this mortgage indebtedness. The fourth and fifth grounds of the interplea raise the question of the constitutionality of the act under which this forfeiture is sought to be enforced, in so far as it is sought to be applied to that portion of what was formerly Indian Territory, not now "Indian country," as that term is defined by law and controlling decisions of the Supreme Court.

The plaintiff demurs to the second and third grounds relied upon by the interpleader; that is, his assertion of his claim under the mortgage and the fact that, if the automobile was being used in the unlawful manner alleged in the information, it was against his will and without his knowledge or consent.

In the Indian Appropriation Act, approved March 2d, 1917, it is provided:

"That automobiles or any other vehicles or conveyances used in introducing or attempting to introduce intoxicants into the Indian country, or where the introduction is prohibited by treaty, or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section 2140 of the Revised Statutes of the United States." 39 Stat. 970.

Section 2140 of the Revised Statutes (Comp. St. 1916, § 4141) provides that, if certain officers therein named have reason to suspect or are informed that any white person or Indian is about to or has introduced any spirituous liquor or wine into the Indian country, in violation of law, such officer may cause the vehicles or place of deposit of such person to be searched, and, if any such liquor is found therein, the same, together with the vehicles used in conveying the same, and the goods, packages, and peltries of such person shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and forfeited, one half to the informer and the other half to the United States. By act of Congress of March 1, 1907 (United States Compiled Statutes 1916, § 4142), the authority conferred upon the several officers named in Revised Statutes, § 2140, was also conferred upon the special agent of the Indian Bureau for the suppression of the liquor traffic among the Indians and in the Indian country, and his duly authorized deputies working under his supervision.

[1, 2] Section 2140, it will be noted, enumerates "boats, teams, wagons, and sleds" as the things which, if caught illegally conveying liquor, may be seized and forfeited. Shortly prior to the enactment of this proviso in the last Indian Appropriation Act, it had been decided that this statute did not authorize the forfeiture of an automobile under the same circumstances. United States v. One Automobile et al., 237 Fed. 891, decision by District Judge Bourquin, for the District of Montana, rendered November 25, 1916. In this case, and by the same court in United States v. Whiskey, 213 Fed. 986, it had also been decided that only the interest of the person who actually violated the law by bringing in the liquor, if any such interest he had, in the vehicle sought to be condemned, could be forfeited; that if the owner of the vehicle was another person, who had intrusted him with the vehicle for some lawful purpose, and who neither consented to nor knew of the illegal use to which it was being put, a forfeiture could not be had. Congress must be presumed to have placed this proviso in the Indian Appropriation Act with knowledge of these decisions. The proviso effected an amendment of section 2140, in so far as it relates to seizures in the Indian country, by adding automobiles to the list of vehicles subject to forfeiture. It also extended the provisions of 2140, as so amended, so that as to seizure, libel, and forfeiture of all such vehicles it was operative, not only in what is strictly Indian country, as that term has come to be defined, but also in any other places where the introduction of such intoxicants is prohibited by treaty or federal statute.

Further, it will be noted that section 2140 provided that the liquor · found, together with the boats, teams, wagons, and sleds used in conveying same, and also the goods, packages, and peltries of such person, might be forfeited. This had been held to confine the forfeiture to the interest only of the person guilty of the introduction, so that only where the vehicles were actually owned by the person using them in such law violation could they be condemned and forfeited. But by the proviso under consideration this was amended, so that:

"Automobiles or any other vehicles or conveyances used in introducing or attempting to introduce intoxicants into the Indian country, or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section 2140."

Construed in the light of the judicial construction placed by the courts upon the language of section 2140, and giving the proviso the effect which its language plainly imparts, I have no doubt that Congress intended by this legislation to subject to seizure and forfeiture all automobiles and other vehicles caught being used in the introduction of liquor in violation of the laws and treaties mentioned, regardless of whether the one so using them was the owner or the agent or servant of the owner, or whether he was some person who, having secured possession of the vehicle from the owner for a lawful purpose, was using it in this unlawful purpose without the knowledge or consent of the owner. It is a harsh law, but Congress was dealing with an evil which requires harsh measures in its suppression. It is a notorious fact, no doubt well known to Congress, that particularly in this district, which comprises what was formerly Indian Territory, with a far greater Indian population than any other equal area in the United States, and which is prohibited territory by federal statute so far as the introduction of liquor from other states is concerned, violators of this law by the hundreds have availed themselves of the facility for carrying liquors in large quantities and evading detection which automobiles afford to carry on this nefarious traffic. It has long presented a serious problem to the officers charged with the enforcement of the law, and has glutted the docket of this court with criminal prosecutions. If, in addition to the loss of the liquor and the hazard of a criminal prosecution, the automobile used in this law violation may also be confiscated, regardless of whether the law violator is the owner or some one to whom the owner has intrusted it, there will have been added an additional deterrent of considerable moment.

[3, 4] Nor can the power of Congress to enact such legislation be successfully questioned. It is now settled beyond controversy that the act of March 1, 1895, prohibiting the introduction of liquor into Indian Territory, is still in force so far as relates to shipments from points outside of this state into any portion thereof formerly Indian Territory. Joplin Merc. Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705. In this case it is said:

"The authority of Congress to preserve in force existing laws or enact new ones after statehood with reference to traffic or intercourse with the Indians,

including the liquor traffic, was well established; the power of Congress over such commerce being plenary and independent of state boundaries."

If Congress may prohibit the introduction of liquor from outside the state into the Indian Territory portion of the state, it can certainly, as a means of enforcing this law and subserving the public policy ·which is involved in it, provide that the vehicles used in such illegal introduction shall be forfeited to the government, regardless of ownership, just as it has by numerous acts ever since the institution of this government provided for the forfeiture of articles used in violation of the customs and revenue laws. That it has such power in the enforcement of the customs and revenue laws is settled by a long line of decisions.

In this case, as in those cases, so far as the forfeiture proceedings are concerned, the thing involved, and not its owner, is the offender, and is proceeded against, just as the wagon, boat, or other conveyance used in violation of the customs or revenue laws. The person who uses the thing in violation of the law against introducing liquor violates that statute, and is subject to criminal prosecution; but that is another and distinct proceeding. As said by the Supreme Court in Dobbins Distillery v. United States, 96 U. S. at page 399, 24 L. Ed. 637 et seq.:

"Cases arise, undoubtedly, where the judgment of forfeiture necessarily carries with it, and as part of the sentence, a conviction and judgment against the person for the crime committed, and in that state of the pleadings it is clear that the proceeding is one of a criminal character; but where the information, as in this case, does not involve the personal conviction of the wrongdoer for the offense charged, the remedy of forfeiture claimed is plainly one of a civil nature, as the conviction of a wrong-doer must be obtained, if at all, in another and wholly independent proceeding. 1 Bish. Crim. Law (6th Ed.) § 835, note 1; United States v. Three Tons of Coal, 6 Biss. 371 [Fed. Cas. No. 16,515]. Forfeitures, in many cases of felony, did not attach at common law, where the proceeding was in rem, until the offender was convicted, as the crown, Judge Story says, had no right to the goods and chattels of the felon, without producing the record of his conviction; but that rule, as the same learned magistrate says, was never applied to seizures and forfeitures created by statute in rem, cognizable on the revenue side of the exchequer court, for the reason that the thing in such a case is primarily considered as the offender, or rather that the offense is attached primarily to the thing, whether the offense be malum prohibitum or malum in se; and he adds that the same principles apply to proceedings in rem in the admiralty. The Palmyra, 12 Wheat. 1 [6 L. Ed. 531]. Corresponding views were expressed by the same learned judge in a case decided at a much later period, in which he remarked that the act of Congress in question made no exception whatsoever, whether the alleged aggression was with or without the co-operation of the owners. Nor, said the judge in that case, is there anything new in a provision of that sort. It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which, or by which, or by the master or crew thereof, a wrong or offense has been committed, as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof; the necessity of the case requiring it as the only adequate means of suppressing the offense or wrong, or of insuring an indemnity to the injured party. United States v. Brig Malek Adhel, 2 How. 210 [11 L. Ed. 239].

"Beyond all doubt, the act of Congress in question attaches the offense to the distillery, and the real and personal property connected with the same;

the words of the act defining the offense being that if any such false entry shall be made in said books, or any entry shall be omitted therefrom, with intent to defraud or to conceal from the revenue officers any fact or particular required to be stated and entered in either of said books, or to mislead the revenue officers with reference thereto, or if any distiller shall omit or refuse to produce either of said books, or shall cancel, obliterate, or destroy any part of either of said books, or any entry therein, with intent to defraud, or shall permit the same to be done, or such books or either of them be not produced when required by any revenue officer, * * * the distillery, distilling apparatus, and the lot or tract of land on which it stands, and all personal property used in the business, shall be forfeited to the United States. 15 Stat. 133. Nothing can be plainer in legal decision than the proposition that the offense therein defined is attached primarily to the distillery, and the real and personal property used in connection with .the same, without any regard whatsoever to the personal misconduct or responsibility of the owner, beyond what necessarily arises from the fact that he leased the property to the distiller, and suffered it to be occupied and used by the lessee as a distillery. Cases often arise where the property of the owner is forfeited on account of the fraud, neglect, or misconduct of those intrusted with its possession, care, and custody, even when the owner is otherwise without fault; and Judge Story remarked, in the case last cited, that the doctrine is familiarly applied to cases of smuggling and other misconduct under the revenue laws, as well as to other cases arising under the embargo and nonintercourse acts of Congress. Controversies of the kind have arisen in our judicial history; and it has always been held in such cases that the acts of the master and crew bind the interest of the owner of the ship, whether he be innocent or guilty, and that in sending the ship to sea under their charge he impliedly submits to whatever the law denounces as a forfeiture attached to the ship by means of their unlawful or wanton misconduct."

If the government has the broad power of forfeiture outlined above, where it is necessary to subserve the public good in the enforcement of the revenue, customs, and admiralty laws, it must, I think, be conceded the same power to subserve the public good in the enforcement of the laws against illegal traffic with the Indians.

[5] The question of unlawful search is not involved in this case. Therefore it is immaterial that the automobile may have been seized upon other than technically Indian country. The interpleader was not in possession of the automobile at the time of the seizure, but his mortgagor, Latta, was. It was he, and not the interpleader, who was subjected to any search which may have been made that resulted in the discovery of the liquor in the car leading to its seizure and this forfeiture proceeding. The proviso of the Indian Appropriation Act under consideration does not attempt to enlarge the right of the officers to make search without warrant in other than Indian country. But whenever, by search or otherwise, a user of an automobile or other vehicle is apprehended in the act of violating the statute against introducing, then a case of seizure and forfeiture of such vehicle is presented.

I conclude that the automobile is subject to forfeiture, notwithstanding any special interest King may have in it by virtue of his mortgage. By the terms of his mortgage he intrusted the possession of the automobile to his mortgagor, Latta. Had he been the owner, and so intrusted it to Latta's possession and control, whereby he might devote it to unlawful traffic, he could not, when Latta had done so,

assert his ownership as a defense to such forfeiture proceeding. Neither does the special interest or lien he claims by virtue of his mortgage place him in any more favorable position.

The demurrer will be sustained.