The State v. Peterson.

No. 22,766.

THE STATE OF KANSAS, *Appellee*, v. OSCAR PETERSON and FRED MARTIN (FARMERS AUTO COMPANY, *Appellant*).

### SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Illegal Transportation—Forfeiture of Automobile—Rights of Mortgagee.* The provisions of section 4, chapter 217, Laws of 1919, are considered together with the legislative history of the act, and held not to show an intent to protect from forfeiture the interest of a holder in good faith of a mortgage on an automobile used in the transportation of intoxicating liquors and which has been declared a common nuisance and ordered sold.

2. SAME — *Illegal Transportation — Statute Forfeiting Automobile — Within Police Power of State—Statute Constitutional—Rights of Mortgagee.* It is within the police power of the state to provide for the forfeiture of property used in the violation of a criminal statute and to provide that the rights of an owner or mortgagee, however innocent of the intent or purpose for which the property is to be used, shall be forfeited. Notwithstanding the holder in good faith of a mortgage on an automobile is not entitled to have his lien satisfied out of the proceeds of a sale under the provisions of chapter 217, Laws of 1919, declaring an automobile used in the transportation of intoxicating liquors a common nuisance and providing for its forfeiture and sale, the act is not unconstitutional on the ground that it violates the fourteenth amendment by taking property without due process of law.

Appeal from Nemaha district court; WILLIAM I. STUART, judge. Opinion filed November 6, 1920. Affirmed.

*Clifford W. Baldwin,* and *Charles H. Herold,* both of Seneca, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Rufus M. Emery, jr.,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The sole question for determination in this appeal is whether the holder in good faith of a mortgage on an automobile is entitled to have his lien satisfied out of the proceeds of a sale under the provisions of chapter 217, Laws of 1919, declaring an automobile used in the transportation of intoxicating liquors a common nuisance and providing for its forfeiture and sale.

An information filed by the county attorney charged that Oscar Peterson and Fred Martin unlawfully and willfully used one Buick six roadster, 1917 model, in transporting intoxicating liquors from Brown county into Nemaha county, thereby rendering the automobile a common nuisance. Under a warrant issued upon the information the sheriff took possession of the machine. The Farmers Auto Company, the appellant, a Missouri corporation, filed its answer alleging that on April 28, 1919, at St. Joseph, Mo., one H. J. Bailey executed to the appellant his note and mortgage on the machine for $500, payable in four equal installments, the last of which was due August 28, 1919. The instrument, an ordinary chattel mortgage, was duly recorded in Buchanan county, Mo. The appellant alleged its ignorance and its innocence of any criminal intent on the part of Bailey or his employees to use the roadster for the purpose mentioned in the information or for any other criminal purpose, and alleged that the sale and mortgage were in good faith. The appellant asked that its mortgage be declared a prior lien, and that so much of the automobile as covered thereby be declared not a common nuisance as defined in the statute, and that out of the proceeds of the sale under the provisions of the law, the appellant recover the amount of its lien. On the trial the court gave judgment against the appellant, as intervener, and ordered the automobile sold as a common nuisance, free of any claim of the mortgagee. The court found, however, that the mortgagee had no knowledge of any intent on the part of the purchaser or other persons to use the car in transporting intoxicating liquors in Kansas and that the sale was made by the appellant in good faith. By the consent of the state and of the appellant the automobile was sold and the proceeds placed in the hands of the clerk of the court pending the determination of this appeal.

No question as to the validity of the law so far as it affects guilty parties is raised, but the contention is that the law is unconstitutional so far as it affects innocent parties in the situation of appellant. It is admitted that the automobile was being used by the original defendants in violation of the provisions of the statute.

1. Before questioning the constitutionality of the law, the appellant contends that the act shows a clear legislative intent

to protect the rights of innocent parties, and in support of this calls attention to certain language in section 4 chaper 217, Laws of 1919, which reads:

"If the court shall find that such vehicles, automobiles or other property or any part thereof were at the time a common nuisance, as defined in section No. 1, it shall adjudge forfeited so much thereof as the court shall find was such common nuisance, and shall order the officer in whose custody it is to sell the same publicly . . ."

The appellant sees in this language an indication that the legislature realized the law as a harsh one which might in its operation work injustice to innocent persons, and it is argued that the language should be construed as attempting to cover a situation such as presented by the present case and to protect the rights of an innocent mortgagee by giving to the trial court discretion to make a finding that a part of a vehicle constituted a common nuisance, while another part did not constitute a nuisance and was not subject to forfeiture. We think that if the legislature had intended to protect the rights of an innocent mortgagee or other lien holder, it would have found appropriate language to express that intention clearly.

By reference to the senate and house journals it appears that the bill which afterwards became the law in question originated in the senate, and as first passed by the senate contained a section, numbered 6, which in express terms provided for the protection of one who held a mortgage or other lien in good faith on the property seized, giving him a right to go into court and have his lien determined, and providing that if on the final hearing the claim be adjudged to be a valid lien against the property and executed in good faith, without any knowledge that the property was to be used or was being used in a manner prohibited by the act, the court should determine the amount of the lien and determine that out of the proceeds of any sale there should be paid: first, the costs; second, the amount of such mortgage; and third, the balance into the county treasury for the benefit of the common schools. The bill went to the house where this section was stricken out and the bill passed as amended. It then went to conference. The report of the conference committee was that the senate concur in the house amendments by striking out section 6, which was done and the bill as it now reads was passed.

The history of the bill in the legislature shows that both houses had their attention challenged to the propriety of protecting the interest of an innocent holder of a mortgage or other lien upon automobiles found to be used for the unlawful purpose of carrying intoxicating liquors, and that the legislature in its wisdom refused to make a provision for such protection.

2. It is insisted, however, that unless the rights of an innocent mortgagee under such circumstances are protected, the act is unconstitutional. The contention is that the interpretation of the law by the trial court deprives appellant of its property without due process of law in violation of the fourteenth amendment to the constitution of the United States for the reason that no crime has been charged against the appellant, who merely intervened and set up its claim because its property had been seized by the state under the provisions of a law concerning a crime committed by others. It is argued that decisions upholding the validity of statutes authorizing the seizure and destruction of kegs, glasses, bottles and bar fixtures declared to be a common nuisance in connection with the illegal traffic in intoxicating liquors furnish no analogy because the party complaining in such case must necessarily have had some guilty knowledge of the use for which his property was intended, the nature of the property itself showing the purpose for which it was to be used; that the property in this case was sold in the ordinary course of business to a purchaser who might have used it in numberless ways for the ordinary lawful purposes of business or pleasure. Some attempt is made to argue that the law is contrary to public policy and in restraint of trade because it destroys the security of mortgages which it is the policy of the law to protect, and attention is called to the large volume of business done everywhere in the present day on a credit basis; and it is urged that the judgment of the trial court renders it unsafe to hold a mortgage or other lien or any interest in an automobile, wagon, truck, buggy, or even an airship because of the ease with which any person criminally inclined might obtain possession of such vehicle and by making unlawful use of it deprive the owner of his property. It is said that it requires but a step further to hold that where a thief steals an automobile and

transports intoxicating liquors therein, the property if seized by the state could be forfeited to the same extent as in the present case, for it is said the appellant was just as helpless to prevent what took place as the owner of a stolen car would be to prevent a thief from putting liquor therein and subjecting the car to seizure.

In our opinion it is a sufficient answer to these suggestions to say that it is within the police power of the state to provide for the forfeiture of property used in violation of a criminal statute and to provide expressly that the rights of an owner or mortgagee, however innocent of the intent or purpose for which the property is to be used, shall be forfeited, and such a law is not open to the objection that it violates the fourteenth amendment by taking property without due process of law.

Doubtless the legislature realized that any provision for the protection of a lien of a mortgagee would open the door to collusion and afford a ready means of evading the law. How readily such a provision might be used for defeating the purpose for which the law was enacted is apparent when we consider that any person desiring to engage in the illegal transportation of intoxicating liquors could, by placing an incumbrance upon an automobile, minimize the financial investment and hazard of the business. The history of our statute, which shows that the legislature declined, after full consideration of the subject, to make provision for the protection of mortgagees or other lien holders, makes it, in our opinion, quite clear that the statute should be construed the same as if it had expressly provided that the holder of a valid chattel mortgage should not be protected.

In *Balch v. Glenn*, 85 Kan. 735, 119 Pac. 67, it was said that the "legislature of the state may declare that to be a nuisance which is detrimental to the health, morals, peace or welfare of its citizens." (Syl. ¶ 3.) It was also held that a statute, designed to protect and promote the horticultural interests of the state, which in effect makes all orchards, trees and plants infested with San José scale and other orchard pests nuisances, was a proper exercise of the police power and was not unconstitutional, because it authorized the expense of abating such nuisance to be charged against the property of the owner. In that case it was ruled:

"Nor is the statute in question unconstitutional on the ground that it provides for taking private property without due process of law. It rests wholly with the legislature whether, in the exercise of its power of police regulation, the individual whose property is destroyed shall receive compensation therefor." (Syl. ¶ 4.)

Of the changing conditions which bring about the exercise of an enlarged police power it has been well said:

"This increased police power, or rather the extended exercise of the sleeping police power, may affect, nay, may destroy, rights vested, even contract rights, under certain circumstances." (Brannon on The Fourteenth Amendment, 230.)

The Federal law prohibiting the transportation and introduction of liquor into Indian country was amended March 2, 1917. Congress enacted the following provision (Indian Appropriation Act, Part 1, 39 U. S. Stat. at Large, 970, U. S. Comp. Stat. 1918, § 4141a) :

"That automobiles or any other vehicles or conveyances used in introducing, or attempting to introduce, intoxicants into the Indian country, or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section twenty-one hundred and forty of the Revised Statutes of the United States."

Previous to the amendment it had been held that the lien of a valid chattel mortgage held by an innocent party on an automobile used in introducing or attempting to introduce intoxicants into the Indian country was not forfeited by the provisions of the act. (*Shawnee Nat. Bank v. United States,* 249 Fed. 583, 161 C. C. A. 509.)

In the case of *United States v. One Seven-passenger Paige Car,* 259 Fed. 641, it was held that an automobile used in violation of the statute was subject to forfeiture, notwithstanding the special interest set up by an intervener by virtue of his mortgage. In the opinion it was said:

"It appears to have been·the intention of Congress that automobiles or any other vehicle or conveyance used in introducing or attempting to introduce intoxicants into the Indian country, or where the introduction is prohibited by treaty or Federal statute, should be subject to seizure, libel and forfeiture, without regard to ownership. This identical statute was under consideration by Judge Campbell (*United States v. One Buick Roadster Automobile* [D. C.] 244 Fed. 961), where a similar conclusion was reached." (p. 644.)

The State v. Peterson.

The supreme court of South Carolina has held that where a mortgagee had no knowledge of or gave no consent to the use of an automobile by the mortgagor for the illegal transportation of liquor, his interest could not be confiscated. (*Seignious v. Limehouse,* 107 S. C. 545.) And in *Shrouder v. Sweat, Sheriff, et al.,* 148 Ga. 378, the supreme court of Georgia held that under the peculiar provisions of their statute the mortgagee of a car who held a valid mortgage thereon for the purchase money, and had not participated in the criminal intent of the purchaser of the car who used it in carrying intoxicating liquors, could maintain an action in equity to protect his lien. Other cases will be found upholding this doctrine, but they are not persuasive because they are based upon the provisions of statutes different from ours.

The provision in the statute for serving notice upon and permitting all persons claiming any interest in such vehicles and other property to answer the complaint made against such property, and show cause why the same should not be adjudged forfeited and ordered sold, must be construed to have been in part for the purpose of determining the ownership of the automobile, so that the purchaser at the sheriff's sale would obtain a good title, and also to permit the mortgagee or other person claiming an interest in the property to produce evidence to disprove the charge that it had been used for an unlawful purpose. This was the extent of the right given by the statute to one claiming an interest in the property. If the court found that the property had not been used for an unlawful purpose, no forfeiture would be declared. The purpose of the sale and forfeiture was to make certain the abatement of the nuisance and to promote the morals and health of the people.

The judgment is affirmed.