State v. Morris.

---

No. 27,501.

THE STATE OF KANSAS, *Appellee,* v. DENNIS MORRIS, *Defendant,* and THE COMMERCIAL CREDIT COMPANY, Intervener, *Appellant.*

(257 Pac. 731.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Forfeiture of Transporting Automobile—Jurisdiction of Justice of the Peace.* Justices of the peace have jurisdiction to adjudge forfeiture of automobiles used to transport intoxicating liquor.

2. SAME—*Forfeiture of Transporting Automobile—Evidence of Transportation.* The evidence considered, and *held,* transportation of intoxicating liquor by means of an automobile was proved.

3. SAME — *Forfeiture of Transporting Automobile — Rights of Assignee of Mortgage—Constitutional Law.* The purchaser of an automobile gave the seller a note secured by chattel mortgage in part payment of the price. The seller transferred the note and mortgage to an assignee. All the parties resided in Kansas City, Mo. The mortgage provided the automobile should not be removed from the residence of the owner, and should not be used to transport intoxicating liquor. The owner voluntarily gave possession of the automobile to a person who drove it into Kansas, and there used it to transport intoxicating liquor contrary to law. The owner and the mortgagee did not assent to and were not cognizant of the unlawful act. Pursuant to the liquor nuisance statute the automobile was regularly seized and, after notice and a hearing in which the assignee of the mortgage participated, was ordered sold and the proceeds of sale were ordered paid to the school fund. *Held,* the forfeiture infringed no right or privilege of the assignee of the mortgage, protected by the fourteenth amendment to the constitution of the United States.

Appeal from Osborne district court; WILLIAM R. MITCHELL, judge. Opinion filed July 9, 1927. Affirmed.

*David G. Fink,* of Osborne, *E. H. Gamble, Allan R. Browne* and *Bryan Allen,* all of Kansas City, Mo., for the appellant.

Intoxicating Liquors, 33 C. J. pp. 518 n. 71, 670 n. 59, 671 n. 62, 684 n. 32, 685 n. 54, 687 n. 77; 2 A. L. R. 1596; 3 R. C. L. Supp. 456; 4 R. C. L. Supp. 995; 5 R. C. L. Supp. 840.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *J. F. Tillman,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The proceeding was one to forfeit an automobile used in transporting intoxicating liquor as a common nuisance. Judgment of forfeiture was rendered, and a mortgagee of the automobile, who intervened, appeals.

The automobile was discovered standing in front of the Lipton hotel in the city of Downs, with liquor dripping from it. Under direction of the mayor the city marshal took possession of it. The county attorney was notified, and a John Doe warrant was issued under which Dennis Morris was arrested. Two days later, and on April 19, 1926, complaint was made before a justice of the peace charging Morris with violation of the liquor law. The fourth count of the complaint charged maintenance of a common nuisance by using the automobile for transporting intoxicating liquor. The automobile was seized by the sheriff under a warrant issued pursuant to the complaint. Notice to persons claiming an interest in the automobile was given, and the mortgagee appeared and answered. With other reasons why the vehicle should not be forfeited, the answer pleaded the seizure was in violation of the fourteenth amendment to the constitution of the United States. After a hearing, the justice entered judgment forfeiting the automobile. The mortgagee appealed to the district court, and after a trial the judgment complained of was entered. The mortgagee contends the justice of the peace had no jurisdiction under the laws of Kansas to adjudge forfeiture of the automobile, and that on appeal the district court exercised the jurisdiction of a justice of the peace.

The proceeding was a civil proceeding and not a criminal proceeding, either by virtue of the code of criminal procedure before justices or the criminal provisions of the intoxicating-liquor law. The code of procedure, civil, before justices provides that justices of the peace shall have original jurisdiction of civil actions for recovery of money only when the amount claimed does not exceed $300, and shall have jurisdiction in other cases not material here. In this instance the action was not one for recovery of money, and the code provision has no application. The district court found the value of the automobile to be $325, but judgment was not rendered

for or against anybody for that or any other sum. Judgment was for sale of the automobile and for payment of the proceeds of sale less costs, to the school fund. Value of the automobile was not an issue in the proceeding, and the only purpose of the finding of value was to fix amount of the appeal bond. (R. S. 21-2166.)

The constitution provides the powers and duties of justices of the peace shall be prescribed by law (art. 3, § 9), and the powers of justices of the peace to abate liquor nuisances are prescribed in the intoxicating liquor law. Abatement is by seizure and destruction or by seizure and sale. Liquor nuisances may also be enjoined. Justices of the peace may not issue injunctions, but this fact does not militate against power to abate. (*Norton v. Saline County Comm'rs*, 118 Kan. 659, 662, 236 Pac. 819.) Under the statute of 1901 (R. S. 21-2133 *et seq.*), seizure was limited to intoxicating liquor, bottles, glasses, kegs, pumps, bars, and other property used in keeping a place as a liquor nuisance. After notice to persons claiming an interest in such articles, summary hearing, and judgment of condemnation, the articles were destroyed. Under the statute of 1919, declaring automobiles used in transportation of intoxicating liquor to be common nuisances, the seizure includes the vehicle and all intoxicating liquor found in it, together with the bottles, jugs and vessels containing the liquor, and other property used in transportation. After condemnation the vehicle is sold, but the liquor, the containers, and other property are destroyed. (R. S. 21-2162 *et seq.*)

The abatement provisions of the liquor law do not specify the court in which an abatement proceeding may be commenced, but the jurisdiction is indicated by the nature of the process employed. While the proceeding to abate is a civil proceeding *in rem*, the process was borrowed from the procedure in criminal cases. The proceeding is instituted by the filing of a complaint or an information. District courts do not take cognizance of complaints. They act on information filed by the county attorney, or on indictment by a grand jury. (R. S. 62-801.) Justices of the peace do not take cognizance of informations. They act on complaint made on oath or affirmation. (R. S. 63-201.) Therefore, the words of R. S. 21-2133 and 21-2163, "upon the filing of a complaint or information," are to be read "upon the filing of a complaint before a justice of the peace or an information in the district court."

10—124 Kan.

The purpose of the 1901 statute was to punish the maintaining of a nuisance—a misdemeanor cognizable by justices of the peace—and to abate the nuisance by seizing and destroying the instrumentalities of maintenance. The legislature had no thought of dividing the jurisdiction and permitting a justice to punish but requiring recourse to the district court for authority to seize and destroy. The 1919 statute was framed on the same theory as the 1901 statute, and the various provisions of the liquor law are to be considered and construed as an entirety and as if enacted at the same time. (*Norton v. Saline County Comm'rs,* supra.) Therefore, the word "court," appearing in both statutes, was used in a sense inclusive of both kinds of judicial tribunal.

The mortgagee contends there was no evidence to prove the automobile was used to transport intoxicating liquor. The contention is frivolous, but, because a constitutional question is involved, it may not be out of place to state the facts in order to illustrate adaptability of the automobile to an illegal purpose (*Goldsmith-Grant Co. v. United States,* 254 U. S. 505, 513), and to illustrate the need for the law to build up a secondary defense against a forbidden use (*Van Oster v. State of Kansas,* 47 Sup. Ct. Rep. 133, 134).

The automobile was a closed Hupmobile roadster. When liquor running from it called attention to it, it was closed, locked, and unattended. It was first observed by a man in a near-by building, and then by two passersby. The mayor then came on the scene, and then the city marshal. At about this time Morris appeared. He told the marshal the automobile was his, but he had no key for it, and would not unlock it if he had. The marshal told him he was under arrest, but he went into a toilet, then into a telephone booth, and then departed. He was captured about two miles south of town. He subsequently broke jail, and has never been tried. The keys of the car were fished from the toilet, and the car was unlocked. When unlocked it was found to contain nine one-gallon cans of intoxicating liquor, six one-gallon jugs, some filled and some only partly filled with intoxicating liquor, and seventeen quart and seventeen pint bottles of intoxicating liquor. Morris had registered at the hotel from Missouri, the automobile bore a Missouri license, and the mortgagee proved the automobile belonged in Kansas City, Mo. The possibility that the automobile was empty when it was parked at the place where it was seized, and that it had received

State v. Morris.

its cargo of intoxicating liquor in the daytime while standing in front of a hotel on a public street of the city of Downs, is rather remote.

The constitutional question raised by the mortgagee's answer to the complaint against the automobile has been indicated. The automobile was purchased by James P. Drew, a resident of Kansas City, Mo., from the Howard Motors Company, of Kansas City, Mo. Drew made a cash payment, and gave his note to the motors company for the remainder of the price. The note was secured by chattel mortgage on the automobile, and the note and chattel mortgage were assigned to the intervener, the Commercial Credit Company, of Kansas City, Mo. The mortgage provided that the mortgagor should not remove the automobile from his place of residence, and should not use, or cause or permit it to be used, for transporting intoxicating liquor. Violation of these provisions occasioned default and authorized foreclosure. At the time the automobile was seized, the intervener had a valid chattel mortgage lien upon it to secure the sum of $784.88. The intervener had no notice or knowledge of the unlawful use to which the automobile was devoted, and did not assent to such use.

Drew testified, in a way, to the circumstances under which Morris obtained possession of the automobile. His testimony follows:

"Prior to April 27, 1926, I let a man named Billy Pretzel drive the car one evening. He said a friend of his named Morris wanted to use it to go to Branson, Missouri, in the Ozarks, to see his mother, and would be back in a few days and pay me for its use. I did not then or at any time consent that he or any one else take my car out of Missouri, nor carry, transport or have liquor in or about the car. If any was carried, transported or possessed in or about the car, or if it was removed from Missouri, it was without my consent and against my wishes."

Drew's testimony was given by deposition, and this court possesses the same competency to determine its probative force that the district court possessed. Drew testified he let Billy Pretzel drive the car one evening. This tends to show a lending of the car to Pretzel one evening. Why Pretzel wanted to drive the car, whether he returned it that evening or afterward, and when he negotiated for use of the car by Morris, are not disclosed. Who Pretzel was, and what the relations were between him and Drew which justified Drew's confidence in him, are not disclosed. The precise nature of the authority Pretzel had from Morris, if any, is unknown. Whether

Drew knew Morris, and whether Drew negotiated with Morris personally, are not disclosed. Morris may have desired to visit mother down in the Ozarks just as the apocryphal office boy desires to attend grandmother's funeral on the afternoon the deciding game is played on the home-team grounds. On the other hand, Morris may not have intended to make a rum-running expedition into Kansas until after he received possession of the car. It is reasonable to infer that Morris was willing to pay for use of a car, and the event disclosed that in some way the car came into his possession. Drew fixed no definite date on which he parted with possession. The car was taken *flagrante delicto,* and it devolved on the claimant to show cause why it should not be condemned. (R. S. 21-2164.) Without discussing Drew's testimony further, the court concludes it may be relied on to this extent only: It fairly establishes the fact that Morris was Drew's bailee of the car for hire. For purpose of the decision, the court will assume Drew did not know the car was to be used for transportation of intoxicating liquor in Kansas, and did not assent to such use.

Drew's situation is precisely the same in legal consequence as the situation of Stella Van Oster in the case of *State v. Brown,* 119 Kan. 874, 241 Pac. 112, affirmed in *Van Oster v. State of Kansas,* 47 Sup. Ct. Rep. 133. For a contemplated consideration Drew voluntarily parted with possession of the car to the person who made unlawful use of it. Morris did not obtain possession by theft or trespass. It would make no difference if he obtained possession by means of false representations respecting what he intended to do with the car. The liquor-nuisance law does not distinguish in consequence between possession honestly obtained and then abused, and possession fraudulently obtained for purpose of abuse. The scene in front of the Lipton hotel in Downs would be the same in either case. There is no certainty, however, that Morris secured possession by deceit. It has been conceded that Drew was not at fault, but when he voluntarily parted with possession, he took the risk of the staunchness of the integrity of his bailee.

Drew's mortgagee stands in no better position than Drew. One was innocent owner, the other was innocent lienholder, and in all essential respects both stood in the same relation to misuse of the car. The mortgagee left the car in Drew's possession and took the risk of its appropriation to unlawful use, whether through Drew's culpability or gullibility, or normal exercise of privilege attending

ownership. (*State v. Peterson,* 107 Kan. 641, 193 Pac. 342; *State v. Stephens,* 109 Kan. 254, 198 Pac. 1087.)

R. S. 21-2162 reads as follows:

"All automobiles, vehicles and other property used in the transportation or carrying of intoxicating liquors into this state or in carrying and transporting intoxicating liquors from one place to another within this state, are hereby declared to be common nuisances."

The legislature and the courts of Kansas have dealt with the illicit liquor traffic for many years. The effrontery, the capacity for machination and the indefatigableness of those who promote and engage in the traffic are amazing. If provisions such as the Drew mortgage contained, that the car should be used in a restricted territory and should not be used to transport intoxicating liquor, were to exempt the car from forfeiture, the statute would not only become waste paper, but a disastrous breach would be opened in the dyke which keeps foreign liquor out of the state.

The judgment of the district court is affirmed.