No. 48,370

STATE OF KANSAS, *Appellant,* v. THIRTY-SIX (36) PINBALL MACHINES, *Appellee.*

(565 P.2d 236)

Opinion filed June 11,1977.

*Zygmunt Jarczyk,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellant.

The opinion of the court was delivered by

FROMME, J.: This action was brought in the name of the state of Kansas upon the relation of the district attorney under K.S.A. 22-3901, *et seq.,* to abate thirty-six (36) pinball machines as common nuisances alleging they had been possessed and used as gambling devices and should be destroyed. The District Court of

Wyandotte County, Kansas, ordered thirty-one (31) of the thirty-six (36) machines returned to the owners. The order was based largely on failure of the state to prove that the owners of the machines had knowledge that the machines were being used for gambling purposes.

When confiscated all of these pinball machines were located in bars and restaurants. The managers and employees of the bars and restaurants were not the owners of the machines. They were lessees or bailees by authority of the owners. The thirty-six (36) machines were lawfully seized either incidental to arrests or by means of valid search warrants issued. Criminal charges were brought against the lessees or bailees because cash payoffs had been made directly to law enforcement officers for free games won in playing these machines.

Some of the lessees or bailees were convicted of possessing gambling devices. The use of eleven (11) of these machines resulted in convictions. Some of the lessees or bailees were found not guilty or the charges against them were dismissed. The possession and use of twenty-five (25) machines were involved in this latter category. In the criminal actions where convictions were obtained five (5) of the eleven (11) machines were ordered sold or destroyed as articles of contraband under authority of K.S.A. 22-2512 (4) by the judges presiding over the criminal prosecutions. The order presently appealed from did not change these previous orders which directed that five (5) machines be sold or destroyed.

The remaining thirty-one (31) pinball machines will be divided and considered in two categories: First, the six (6) machines involved in convictions for possessing gambling devices and second, the twenty-five (25) machines on which no convictions were obtained.

The trial court took judicial notice of the criminal actions which had been prosecuted in that court. The thirty-one (31) machines are now in the custody of the sheriff of Wyandotte County. The machines are referred to as "Bally 25-Hole Pinball Machines" and have the following features:

". . . [T]he player inserts a nickel which brings into play five metallic balls which the player attempts to bring onto the playing field by means of a spring loaded plunger, certain arrangements of these balls will entitle the player to a free replay or more than one free replay, there's a button or switch for canceling free replays, a meter for recording canceled free replays, a multiple coin feature which

allows the player to build up greater odds and a game which lasts only a few seconds."

At the hearing on the abatement petition the state alleged:

". . . [T]hat various law enforcement officers did play these machines at the bars and restaurants where they were located. That these various law enforcement officers did insert a nickel for every game played and they did win free replays on these machines which were cashed in for money at the rate of a nickel per every replay game won. That these payoffs were made by the lessees or bailees of these machines or by their employees at the various bars and restaurants where the machines were located."

From the record on appeal it appears that no evidence was introduced in the abatement action in support of these allegations, other than what was shown by the files in the criminal actions involving these same pinball machines. The court took judicial notice of the files in the previous cases. The decision of the district court was announced after hearing arguments by the district attorney and by attorneys representing some of the owners of the machines. The court concluded:

". . . [T]hat these pinball machines are not gambling devices per se and that there is no proof that the owners of these machines had any knowledge, actual or constructive, that these machines were used for gambling purposes. That these machines are capable of innocent use. That pursuant to the discretion granted the court in K.S.A. 22-3901 and K.S.A. 22-2512, the court orders that all the machines in question, other than those which have already been ordered confiscated and/or destroyed by the other judges of this Judicial District, be forthwith returned to the owners. . . ."

The state appeals from the judgment. The court based its judgment in part, at least, on the failure of the state to prove that the owners had notice that the machines were in fact being used for gambling purposes. We will examine this point first.

As to the pinball machines which were possessed and used as gambling devices, our question is whether the owners of the machines must have knowledge of their use for gambling purposes before a court can order abatement under the nuisance statutes. K.S.A. 22-3902 (3) provides:

"The petition shall describe any real estate alleged to be used or to have been used as a place where such common nuisance is or was maintained or permitted and shall identify the owner or person in charge of such real estate. It shall describe any effects, equipment, paraphernalia or other personal property designed for and used in such unlawful activity. It shall pray for the particular relief sought with respect to such property."

In the present action there was an exhibit attached to the petition identifying the location of each pinball machine at the time it was seized, describing the particular machine, giving the name of the lessee, bailee or employee charged with a violation and setting forth the name and address of each owner. We find no provision in the abatement of nuisance statutes which requires proof of knowledge by the owner that the machines were being used for gambling purposes.

We have held that an action under the abatement of nuisance statutes (K.S.A. 22-3901, *et seq.*) is an action *in rem* and that failure to disclose the ownership of the property will not prevent the court from ordering destruction of the property if it is used for gambling purposes. See *State, ex rel., v. Bissing,* 210 Kan. 389, 502 P.2d 630, the "doggy bingo" case. In *Bissing* paraphernalia used in conducting "doggy bingo" was ordered destroyed since it was used for gambling purposes. Disposition was made under K.S.A. 22-2512 (4).

The question raised in our present case is different from that in *Bissing.* Here we are directly concerned with the rights of the owners under the due process clauses of the constitutions. (Amendments 5 and 14, United States Constitution, and Section 18, Bill of Rights, Constitution of the State of Kansas.) We are asked to determine if these pinball machines are subject to the protections afforded by the due process clauses in the constitutions when the lessor-owners were in no way involved in the gambling activities carried on by the lessees.

We have no cases under the present statutes where the question has been answered. However, this court has upheld similar forfeitures under prior statutes where constitutional challenges were made by innocent owners and mortgage holders of automobiles illegally used to transport liquor. In *State v. Peterson,* 107 Kan. 641, 193 Pac. 342, it was held:

"The provisions of section 4, chapter 217, Laws of 1919, are considered together with the legislative history of the act, and held not to show an intent to protect from forfeiture the interest of a holder in good faith of a mortgage on an automobile used in the transportation of intoxicating liquors and which has been declared a common nuisance and ordered sold." (Syl. 1. See also, *State v. Morris,* 124 Kan. 143, 257 Pac. 731, and *State v. Boucher,* 126 Kan. 796, 271 Pac. 278.)

In *Van Oster v. Kansas,* 272 U.S. 465, 71 L.Ed. 354, 47 S.Ct. 133, 47 A.L.R. 1044, the Supreme Court of the United States upheld this court's decision in *State v. Brown,* 119 Kan. 874, 241 Pac. 112, saying:

"It has long been settled that statutory forfeitures of property entrusted by the innocent owner or lienor to another who uses it in violation of the revenue laws of the United States is not a violation of the due process clause of the Fifth Amendment. [Citations omitted.]" (272 U.S. at 468.)

In the more recent case of *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 40 L.Ed.2d 452, 94 S.Ct. 2080, the United States Supreme Court reviewed the historical background underlying statutory forfeiture schemes applicable to property when such property is used in violation of law. The court held that the statutory forfeiture of a yacht used in transporting controlled substances in violation of law did not unconstitutionally deprive the owner-lessor of its property without just compensation when the owner voluntarily entrusted lessees with possession of the yacht. In that case the lessor-owner was in no way involved in the criminal enterprise and had no knowledge of the illegal use of the yacht.

The rationale of the foregoing cases is that property when used in violation of law is to be treated as the offender without regard to the owner's conduct since that is the only adequate means of suppressing the offense or wrong and of preventing such illegal use of the property in the future.

Accordingly we hold the statutory forfeiture provisions contained in K.S.A. 22-3901, *et seq.,* and in K.S.A. 22-2512 do not contravene the due process clauses of the federal and state constitutions when applied to pinball machines entrusted by innocent owners or lienors to others who use them in violation of the gambling laws of the state of Kansas. The state was not required to prove the owners of the machines had knowledge that the machines were being used for gambling purposes.

We turn now to the statutes authorizing forfeiture. K.S.A. 21-4302 sets forth gambling definitions, among which we find:

"(4) A 'gambling device' is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, or any token, chip, paper, receipt or other document which evidences, purports to evidence or is designed to evidence participation in a lottery or the making of a bet. The fact that the prize is not automatically paid by the device does not affect its character as a gambling device."

K.S.A. 21-4307 states:

"Possession of a gambling device is knowingly possessing or having custody or

control, as owner, lessee, agent, employee, bailee, or otherwise, of any gambling device.

"Possession of a gambling device is a class B misdemeanor."

In our statute, K.S.A. 22-2512, which governs the search and seizure of things which have been used in the commission of crimes, including contraband, we find:

"Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial. . . . When property seized is no longer required as evidence, it shall be disposed of as follows: . . . (4) *Articles of contraband shall be destroyed, except that any such articles which may be capable of innocent use may in the discretion of the court be sold and the proceeds disposed of as provided in subsection (2). . . .*" (Emphasis supplied.)

Subsection (2) referred to in the above quoted portion of the statute provides:

". . . Money shall be restored to the owner unless it was contained in a slot machine or otherwise used in unlawful gambling or lotteries, in which case it shall be forfeited, and *shall be paid to the county treasurer. . . .*" (Emphasis supplied.)

The above statute contains no definition of contraband. However, articles of contraband are generally understood to be goods which are illegal or prohibited; goods or merchandise the importation, exportation or sometimes possession of which is forbidden by law or treaty. (Webster's Third New International Dictionary, unabridged.) In our present case gambling devices are contraband since their possession is forbidden by law. (K.S.A. 21-4307.)

In *Grigsby v. Mitchum,* 191 Kan. 293, 380 P.2d 363, cert. den. 375 U.S. 966, 11 L.Ed.2d 415, 84 S.Ct. 483, it is stated:

"Whether gambling takes place where pinball machines are kept depends primarily on the manner in which they are used, and not upon how they may be labeled or designed in their manufacture." (p. 301.)

See also, *State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 258 P.2d 225, and *State v. Waite,* 156 Kan. 143, 131 P.2d 708.

The trial court found that the pinball machines in the present case are capable of innocent use and are not gambling devices *per se.* We agree. A pinball machine which is played by means of a spring-loaded plunger and metallic balls and which "pays off" only in free replays is capable of innocent use and is not a

gambling device *per se* under the present statutes and case law of the state of Kansas. It is the actual use to which a pinball machine is put that determines whether it is possessed and used as a gambling device. (*Grigsby v. Mitchum,* supra.)

The state contends these pinball machines "are designed for and have been used in carrying on" unlawful activities and therefore under K.S.A. 22-3904 (2) an order to destroy these machines should have been issued. This court in *State, ex rel., v. Bissing,* supra, in considering the interplay of K.S.A. 22-3904 (2) and K.S.A. 22-2512, stated that the two statutes should be considered in *pari materia,* since they relate to the same subject matter, *i.e.,* the disposition of property validly seized by an officer. K.S.A. 22-3904 (2) permits the court in abatement actions to order personal property designed for and used in carrying on certain unlawful activities to be publicly destroyed. The statute is permissive. K.S.A. 22-2512 (4) relating to articles of contraband provides for destruction, "except that any such articles which may be capable of innocent use may in the discretion of the court be sold". So if the articles are contraband and are capable of innocent use the court may make a choice between an order of destruction and an order of sale. We see no conflict in the application of the two statutes in this case.

Six (6) of these pinball machines were used in such a way that they were possessed and used as gambling devices. Criminal convictions were obtained by the state as to these machines and they became contraband. Under the provisions of K.S.A. 22-2512 (4) it is directed that articles of contraband shall be destroyed but any such articles which are capable of innocent use may in the discretion of the court be sold and the proceeds paid to the county treasurer. The trial court found these machines were capable of innocent use. The discretion is placed with the trial court. Therefore, this case must be remanded to the trial court for further proceedings. With regard to the six (6) pinball machines on which convictions were obtained an order should be entered on remand either to destroy the machines or to sell the same and pay the proceeds to the county treasurer as provided in 22-2512 (4) and (2).

As to the twenty-five (25) pinball machines—the lessees or bailees were found not guilty of the gambling charges or the charges were dismissed. There was no evidence introduced in the

abatement action to support the allegations by the state that the pinball machines were used for gambling purposes. The trial court was correct in its conclusion that pinball machines are not gambling devices *per se*. Since no evidence was before the trial court that they were used for gambling purposes they should be returned to the respective owners.

Even though a wrong reason may have been given by the trial court as a basis for its order directing return of these machines this does not render that portion of the judgment invalid or warrant reversal. See cases cited in 1-3 Hatcher's Kansas Digest, Perm. Supp. (Revised Edition), Appeal and Error, Sec. 433.

Accordingly the judgment is affirmed in part, reversed in part and remanded for further proceedings.